IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |  |
|---|---|---|
| **TAREK Z. CHERRY**, | ) | |
| Plaintiff, | ) | Civil Action No.7:22cv00006 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **LT. DOUG BARTON, et al.**, | ) | By: Pamela Meade Sargent |
| Defendants. | ) | United States Magistrate Judge |
| | ) | |

Plaintiff, Tarek Z. Cherry, ("Cherry"), a Virginia inmate proceeding pro se, filed this civil rights Complaint against prison officials, pursuant to 42 U.S.C. § 1983, alleging that they failed to protect him from an attack by another inmate. In response to Cherry's Amended Complaint, (Docket Item No. 8),[1] the defendants filed a Motion to Dismiss, (Docket Item No. 20) ("Motion"), and Cherry has responded, (Docket Item No. 29) ("Response"), making the matter ripe for consideration. After review of the record, the court concludes that the Motion must be granted.

I.

For purposes of addressing the Motion to Dismiss, the court recounts the facts alleged in the Amended Complaint and accepts them as true, except where otherwise noted. *See Mays v. Sprinkle*, 992 F.3d 295, 299 (4th Cir. 2021). Cherry's claims arose in January 2021, while he was confined at Red Onion State Prison, ("Red

---

[1] After reviewing Cherry's initial submissions, the court issued an Order advising him that the Complaint did not state any § 1983 claim against the defendants, because it did not describe actions each defendant had taken or failed to take in violation of Cherry's constitutional rights. The court gave Cherry 21 days to submit an Amended Complaint and advised him that it would take the place of his initial submission and should state sufficient facts about each defendant's actions. Cherry responded by filing the Amended Complaint that is now his operative pleading in the case.

Onion"), in a restorative housing unit, ("RHU"), known as the Intensive Management, ("IM"), Security Level 6 Pod.  In that Unit, per policy, each inmate was "assigned to his own individual cell for strict security purposes." (Docket Item No. 8 at 3).  Two officers in a control booth monitored inmates' movement within the Unit.  One officer operated cell doors and shower doors.  The other officer held a gun and was to "assure controlled movement" of inmates from their cells to the showers and back to their cells. (Docket Item No. 8 at 3).  When an inmate walked back to his cell, policy required that the control booth officer would open that inmate's cell door, allow him to enter and close and secure the door behind him.  A floor officer would then fasten a chain across the door.

On January 15, 2021, between 10:00 and 11:00 a.m., Cherry finished his shower and walked back to his cell.  Correctional Officers Hall and Kelly were in the control booth that day.  Hall opened Cherry's cell door and closed it behind him but failed to secure it.  Neither Hall nor Kelly alerted a floor officer to chain Cherry's cell door.  Sometime later, Hall opened Cherry's cell door again and allowed another inmate, ("Inmate B"), to enter the cell, although Inmate B was not authorized to be in that cell.  Hall then closed the door behind Inmate B.  Kelly was serving as gun officer and, as such, she "was suppose[d] to be overseeing the whole pod." (Docket Item No. 8-4 at 1).  Kelly did not alert Hall that Inmate B was not authorized to enter the cell and did not use the control booth gun to prevent the assault.  Inmate B assaulted Cherry for five to 10 minutes inside the cell.  Cherry's submissions allege that, as a result of this assault, he now suffers from "Post-Traumatic Stress [and] Emotional Distress." (Docket Item No. 1-1 at 1).

Red Onion policy also required a management team of prison administrators to screen inmates to determine if they could safely be housed in the IM Security Level 6 Pod.  Unit Manager Larry Collins, Warden Rick White and Lieutenant Doug Barton played roles in assessing inmates for this Pod.  Inmate B had a known history

of violence. These defendants violated policy and "did not fully assess [Inmate B's] violent history" before approving him to be assigned to the IM Security Level 6 Pod. (Docket Item No. 8-1 at 2). Thus, they failed to protect Cherry from the assault on January 15, 2021.

Cherry's Amended Complaint sues Hall, Kelly, Collins, White and Barton. Liberally construing his submissions, Cherry alleges that (1) Hall and Kelly failed to fully assess and protect Cherry from the assailant inmate on January 15, 2021, in violation of Cherry's rights under the Eighth Amendment; (2) Collins, White and Barton failed to properly and fully assess the assailant inmate's unsuitability for assignment to the IM Security Level 6 Pod, thus failing to protect Cherry, in violation of his rights under the Eighth Amendment; and (3) all five defendants failed to follow prison safety procedure and policy, thus violating Cherry's due process rights under the Fourteenth Amendment. As relief, Cherry seeks monetary damages and an injunction directing that officials release him from the RHU Pod to general population.

II.

A.

The defendants argue that Cherry's claims should be dismissed under Federal Rules of Civil Procedure Rule 12(b)(6) for failing to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) examines the legal sufficiency of the facts alleged on the face of a plaintiff's pleading. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). In considering a motion to dismiss, all well-pleaded factual allegations contained in a complaint are to be taken as true and viewed in the light most favorable to the plaintiff. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of

action," and it must allege facts specific enough to raise a right to relief above the speculative level.[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Furthermore, the court is required to liberally construe complaints filed by plaintiffs proceeding pro se. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pro se complaints are held to a less stringent standard than those drafted by attorneys. *See Erickson*, 551 U.S. at 94; *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). This requirement of liberal construction does not mean, however, that the court should ignore a clear failure to plead facts that set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

B.

Cherry claims that all of the defendants failed to protect him from being assaulted in his cell on January 15, 2021. He claims that Hall and Kelly failed to protect him from the inmate who entered his cell that day and assaulted him, and Cherry claims that the other defendants failed to protect him because they approved Inmate B, despite his known violent history, to be assigned to the IM Security Level 6 Pod with Cherry. Cherry fails to state facts to support these claims against any of the defendants.

It is well-established that prison officials have a duty to take "reasonable measures to guarantee inmate safety" and "to protect prisoners from violence at the hands of other prisoners." *Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015). Yet, not every inmate-on-inmate assault "translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

---

[2] The court has omitted internal citations, quotation marks and/or alterations throughout this Opinion, unless otherwise noted.

To prove a Section 1983 claim against officials for failing to protect him from injury, the prisoner plaintiff must establish: (1) objectively, he was "incarcerated under conditions posing a substantial risk of serious harm" and (2) subjectively, the defendant prison official had a "sufficiently culpable state of mind," one of "deliberate indifference." *Farmer,* 511 U.S. at 834. Under the first prong of this standard, to succeed on a failure-to-protect claim for damages, a plaintiff must show that the harm he suffered was objectively serious. *See Williams v. Shearin*, No. 12–cv–1314, 2013 WL 2295677, at *7 (D. Md. May 23, 2013). The second, subjective prong of the analysis requires evidence of "more than ordinary lack of due care for the prisoner's interests or safety," and "more than mere negligence," but "less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. More specifically, to be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. As such, deliberate indifference is "somewhere between negligence and purpose or knowledge: namely, recklessness of the subjective type used in criminal law." *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995).

An inmate may prove deliberate indifference through direct or circumstantial evidence, and "[d]irect evidence of actual knowledge is not required." *Makdessi*, 789 F.3d at 133. The plaintiff may satisfy the deliberate indifference element with evidence that the challenged circumstances created a "substantial risk" of harm that "was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it." *Makdessi*, 789 F.3d at 133. Even without direct evidence, a risk of "injury

might be so obvious that the factfinder could conclude that the [official] did know of it because he could not have failed to know of it." *Makdessi*, 789 F.3d at 133.

> Accordingly, prison officials may not simply bury their heads in the sand and thereby skirt liability. [An official] may not escape liability if it is shown, for example, that he merely refused to verify underlying facts that he strongly suspected to be true, or that he declined to confirm inferences of risk that he strongly suspected to exist. And it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk. Nor is it dispositive that the prisoner did not give advance warning of the risk or protest his exposure to the risk.
>
> A prison official remains free to rebut the deliberate indifference charge, even in the face of an obvious risk. Prison officials charged with deliberate indifference might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent. But absent successful rebuttal, they may be held liable for obvious risks they must have known.

*Makdessi*, 789 F.3d at 133–34.

On the other hand, an officer's negligent or careless supervision of inmate activity, without more, cannot result in liability under the deliberate indifference standard. *Strickland v. Halsey*, 638 F. App'x 179, 187 (4th Cir. 2015); *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (holding negligent failure to protect does not violate the Eighth Amendment). Similarly, the mere fact that officials knew of an inmate's history of violence is not dispositive on the issue of deliberate indifference. *See Strickland*, 638 F. App'x at 185. "The relevant question is whether the Defendants subjectively believed [the assailant inmate] posed a substantial risk of serious harm to other inmates, not whether they simply knew" he had a history of violence. *Strickland*, 638 F. App'x at 185-86. Put another way, each

official must have had actual knowledge that his conduct uniquely exposed the plaintiff to a specific risk distinct from the general risks of violence by other inmates. *See Rich v. Bruce*, 129 F.3d 336, 339 (4th Cir. 1997). Specifically, the defendant "must actually have drawn the inference" that his actions placed the plaintiff at risk of harm. *Rich,* 129 F.3d at 340.

C.

<u>Defendants Barton and Collins</u>

Cherry does not allege that either of these officials had any involvement in failing to secure him in his cell on January 15, 2021, or in admitting the second inmate to that cell. Cherry alleges only that Barton and Collins approved the second inmate for assignment to the IM Security Level 6 Pod without a proper or full assessment, while knowing of his violent history. Without more, it is not plausible that these actions by Barton and Collins caused or failed to prevent the assault on Cherry. Both Cherry and the second inmate resided in single, locked cells with their out-of-cell movements closely monitored and separate, per policy. Cherry states no facts suggesting that Barton and Collins knew approving these two inmate cell assignments uniquely exposed Cherry (or any other inmate in the Pod) to a distinct risk of harm from the second inmate. Thus, the court cannot find that Cherry has stated facts supporting an actionable failure-to-protect claim against these two defendants. The court will grant the Motion to Dismiss as to the Eighth Amendment claims against Barton and Collins.

<u>Defendant White</u>

Cherry also does not allege that White, the Warden at Red Onion, had any personal involvement in the January 15, 2021, incident. Rather, he faults White for failing to override the classification decision that placed the second inmate in the IM Security Level 6 Pod with Cherry, while White was allegedly aware that the second inmate had a history of violence. These allegations do not state a plausible claim that

White's actions or inactions regarding the second inmate's cell assignment either caused or failed to prevent that inmate's assault on Cherry. Cherry states no facts suggesting that White knew failing to override the cell assignments uniquely exposed Cherry (or any other inmate in the Pod) to a distinct risk of harm from the second inmate.

Cherry also fails to state any supervisory liability claim against White here. As Warden, White cannot be held automatically liable for constitutional violations committed by his subordinates, as the doctrine of respondeat superior does not apply in § 1983 actions. *See Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). A plaintiff must prove three elements to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw,* 13 F.3d. at 799. To satisfy the first element, the plaintiff must show that the subordinate's conduct was "widespread" and committed on "several different occasions," and that it "posed an unreasonable risk of harm of constitutional injury." *Shaw,* 13 F.3d. at 799.

Cherry has made no such showing of events leading up to what happened on January 15, 2021. Instead, he asserts that policy required officers in the IM Security Level 6 Pod to secure each inmate in his own cell, first by opening and closing his door, and then by having a chain fastened across the door. The Amended Complaint does not allege that White knew of any officer, on a previous occasion or occasions, who had admitted first the cell's assigned inmate, then reopened that same door to admit another inmate to the cell, and then closed the door. With no pattern of similar

policy violations to put White on notice of a danger, the court cannot find that White tacitly endorsed the policy violations that occurred on January 15, 2021, or that any action or inaction from White caused the incident. For these reasons, the court will grant the Motion to Dismiss as to the Eighth Amendment claims against White.

<u>Defendants Hall and Kelly</u>

Cherry alleges that these defendants, in their separate roles at the control booth post on January 15, 2021, took or failed to take actions that placed him at risk of harm from the second inmate, in violation of his Eighth Amendment rights. Cherry alleges that, after he entered his cell, Hall closed his cell door, and both defendants failed to have the chain secured across it. Cherry also alleges that Hall reopened Cherry's cell door, allowed the second inmate to enter, and closed the door, and that Kelly, in her role of overseeing the Pod, failed to prevent Hall's actions or to use her gun to protect Cherry.[3]

As allegations in the Amended Complaint indicate, Hall and Kelly, by their post assignments, had to be aware that, for security reasons, inmates assigned to the IM Security Level 6 Pod were to be kept separate from each other during movement outside their individual cells. The policy requiring chains across the cell doors

---

[3] Cherry's response to the Motion to Dismiss includes several factual allegations and arguments about events on January 15, 2021, that are not in his Amended Complaint. He contends that Hall and Kelly closed his cell door *after* noticing there were two inmates inside the cell and that they did not respond reasonably when the second inmate began assaulting Cherry there. However, "a party may not amend his pleadings through briefing." *Evans v. Lovell*, No. 7:20-CV-00434, 2022 WL 34609, at *7 (W.D. Va. Jan. 4, 2022) (citing *S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184–85 (4th Cir. 2013). Therefore, the court does not consider the additional factual allegations in the response as part of the Amended Complaint. In any event, it is self-evident that these new assertions in the response are not based on facts from Cherry's personal knowledge. He could not perceive from inside his cell during the assault what the control booth officers observed or when they realized two inmates were fighting in Cherry's cell. The court need not treat Cherry's factually unsupported and speculative statements about their perceptions as true in addressing the Motion to Dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding complaint cannot "suffice if it tenders naked assertions devoid of further factual enhancement").

indicates an effort to insure against accidental opening of cell doors or contact between inmates. Thus, the court agrees that Hall and Kelly knew closing two IM Security Level 6 Pod inmates together in the same cell created a substantial risk that one or more of the inmates would be harmed.

However, Cherry alleges that after he re-entered his cell on January 15, 2021, Hall "*neglected* to secure" the cell door behind him and failed to get the door chain fastened. (Docket Item No. 8-3 at 1). Cherry states, "Due to [Hall's] *negligence*" Hall reopened Cherry's cell door "moments afterwards" to admit Inmate B and then closed the door behind him. (Docket Item No. 8-3 at 1). Thus, Cherry's own allegations indicate that Hall did not know (or had forgotten) that Cherry already was inside the cell and did not know (or take time to verify) that Inmate B was not assigned to the cell before opening the door, admitting him to that cell and closing the door. And by Cherry's allegations, neither Hall nor Kelly verified (as they should have done) that Cherry, the only inmate assigned to the cell, already had been admitted to it. Thus, Cherry does not allege facts showing that these defendants "subjectively believed [Inmate B] posed a substantial risk of serious harm" to Cherry or any other inmate, *Strickland*, 638 F. App'x at 185, because the evidence is that they believed the cell was empty.

In hindsight, the officers' actions (or inactions in Kelly's case) placed Cherry at serious risk by allowing the assault. But Cherry simply does not allege facts on which he could prove that either officer actually drew the inference that Hall was admitting Inmate B into Cherry's cell with Cherry already in it. Rather, the officers perceived, albeit erroneously, that Cherry's cell was empty and that Inmate B could rightfully and safely be admitted to it. Because Cherry has not alleged facts showing that each official had actual knowledge that his conduct uniquely exposed Cherry to a specific risk distinct from the general risks of violence by other inmates, *see Rich*, 129 F.3d at 339, Cherry has not stated a claim that each of these defendants actually

drew the inference that his actions placed Cherry at risk of serious harm. *See Rich*, 129 F.3d at 340. The court concludes Cherry's submissions indicate that, at most, Hall and Kelly performed their supervision duties on January 15, 2021, in a negligent manner, but did not actually *know* that they were placing Inmate B into the cell that Cherry already occupied. Without actual knowledge of these critical facts, the officers also were unaware of the danger posed to Cherry. *See Makdessi*, 789 F.3d at 133–34. Based on the foregoing, the court concludes that Cherry's allegations do not support a finding that Hall or Kelly acted with deliberate indifference to Cherry's safety on January 15, 2021.

D.

As stated, Cherry also asserts that the defendants' actions on January 15, 2021, violated his due process rights under the Fourteenth Amendment. The court cannot agree.

Cherry's due process claims rest entirely on his contentions the defendants violated VDOC regulations by approving Inmate B for assignment to IM Security Level 6 and/or by admitting him to Cherry's cell on January 15, 2021. Allegations that prison officials occasionally violate prison policies or procedures do not state any § 1983 claim against them. *See, e.g., Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (finding that state official's "failure to abide by [state] law is not a federal due process issue"); *Jackson v. Sampson*, 536 F. App'x 356, 357 (4th Cir. 2013) ("[P]rison officials' failure to follow internal prison policies [is] not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation.").

To the extent that Cherry faults the defendants for their negligent failure to take policy-required steps to protect him, his policy claims also fail. Even when prison officials' lack of due care (negligence) leads to a serious injury to the plaintiff, that lack of care does not approach the sort of abusive government conduct that the

Due Process Clause was designed to prevent. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986). The plaintiff in the *Davidson* case alleged that, despite receiving the plaintiff's written report from Officer Cannon that Inmate McMillian had threatened to harm the plaintiff, Officer James did not read the report before leaving for the day, forgot about the report and took no steps to address McMillian's alleged threat of harm to the plaintiff. *See Davidson,* 474 U.S. at 345-46. Two days later, McMillian attacked and harmed the plaintiff. *See Davidson,* 474 U.S. at 346. The Supreme Court found:

> [The officials'] lack of due care in this case led to serious injury, but that lack of care simply does not approach the sort of abusive government conduct that the Due Process Clause was designed to prevent. Far from abusing governmental power, or employing it as an instrument of oppression, respondent Cannon mistakenly believed that the situation was not particularly serious, and respondent James simply forgot about the note. The guarantee of due process has never been understood to mean that the State must guarantee due care on the part of its officials.

*Davidson,* 474 U.S. at 347–48. Thus, even if one or more of the defendants did not act with due care in screening Inmate B for assignment to the IM Security Level 6 Pod, or by admitting Inmate B to Cherry's cell after Cherry (unbeknownst to Hall and Kelly) had entered that same cell, these merely negligent actions did not implicate any right Cherry held under the Due Process Clause. For these reasons, the court will grant the Motion as to Cherry's due process claims against all defendants.

An appropriate Final Order will be entered.
**ENTERED:** March 23, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE